Argued April 17, reversed May 14, rehearing denied June 11, 1918.

## STATE v. FORD.*

(172 Pac. 802.)

**Forgery—False Recital in Deed.**

1. False recital in deed that E., who signed deed with defendant, was his wife, deed purporting to be deed of said parties, and being executed by E. under the name by which she was known, did not constitute forgery under Section 1996, L. O. L., providing that if any person shall with intent to injure or defraud, falsely make, alter, forge, or counterfeit any deed, or shall with such intent knowingly utter or publish as true or genuine any such false, altered, forged, or counterfeited writing, shall be punished, etc.; there being no intent to utter deed as that of others.

**Names—Common-law Right to Change.**

2. Section 7093, L. O. L., empowering the County Court to hear and determine applications for change of names, does not abrogate the common-law right of a person to change his name.

> [As to right of individual to change his name, see note in Ann. Cas. 1914D, 427.]

**Evidence—Presumption as to Laws of Sister State—Common Law.**

3. In the absence of evidence, it must be assumed that the common-law right of a person to change her name obtains in a sister state.

From Multnomah: GEORGE N. DAVIS, Judge.

Department 2.

The defendant was convicted of the crime of forging a deed in favor of J. D. McKinnon, May 12, 1914. The conviction is based on the contention of the state that he caused the deed in question to be signed by Elizabeth G. Frary, who signed her name as Elizabeth G. Ford and who is described in the body of the deed as appellant's wife. The state claims that she was not his wife and that he had a wife living at the date of the deed. The state also claims that the deed was executed with intent to injure and defraud.

*On the right to change name, see notes in 14 L. R. A. 692; L. R. A. 1915D, 982. REPORTER.

It appears that appellant went to Alaska in 1898; that he there met Caroline C. S. Vogt, a young woman about his own age. While living in the neighborhood of Eagle City they agreed to marry. The state's evidence is to the effect that there was no clergyman or officer authorized to celebrate a marriage to be found in that part of the country. On December 24, 1898, they appeared before J. F. Hobbs, a notary public residing at Eagle City, and entered into a contract of marriage. A certificate to this effect was issued by the notary under his official seal and there is evidence that the notary, who was also an attorney at law, advised them that a contract of marriage so entered into was valid and lawful. The parties to the contract lived together as man and wife for ten years thereafter, visiting appellant's relatives in Michigan and North Dakota and residing in several different places. They were everywhere treated as man and wife, appellant repeatedly acknowledging the relation. Four children were born to them, one of whom, a daughter twelve years of age, testified at the trial.

In 1908 appellant ceased to live with Caroline C. S. Ford, but he continued to contribute to her support until 1914. In 1907 appellant began living with Elizabeth G. Frary. He entered into a written contract of marriage with her, but there was no ceremony performed until after the execution of the deed on which this prosecution is based. Appellant from and after 1908 lived openly with Elizabeth G. Frary, introduced her to a number of persons as his wife and she went under the name of Elizabeth G. Ford.

In 1914 appellant associated himself with J. D. McKinnon and F. C. Sharkey for the purchase of livestock for the Alaska market. McKinnon advanced $15,000 to finance the enterprise and the parties

agreed to share profits and losses equally. For the purpose of indemnifying McKinnon for any loss chargeable to appellant the deed in question was executed. It purported to be a warranty deed but was in effect a mortgage.                         REVERSED.

For appellant there was a brief with oral arguments by *Mr. John C. McCue* and *Mr. William A. Williams.*

For the State there was a brief over the names of *Mr. Walter H. Evans,* District Attorney, *Mr. Charles C. Hindman,* Deputy District Attorney, and *Mr. John A. Collier,* Deputy District Attorney, with an oral argument by *Mr. Hindman.*

McCAMANT, J.—1. Counsel for the respective parties have lavished a wealth of learning and research on the question of the validity of the contract marriage celebrated December 24, 1898, at Eagle City, Alaska. We shall assume without deciding that this marriage was valid. Can it be said on this assumption that appellant forged the deed set out in the indictment?

Section 1996, L. O. L., in so far as it is material here is as follows:

"If any person shall, with intent to injure or defraud any one, falsely make, alter, forge, or counterfeit any * * contract, * * deed, * * or shall, with such intent, knowingly utter or publish as true or genuine any such false, altered, forged, or counterfeited * * writing * * such person upon conviction thereof, shall be punished. * * "

This statute has been construed by the court in *State v. Wheeler,* 20 Or. 192, 195 (25 Pac. 394, 23 Am. St. Rep. 119, 10 L. R. A. 779). It is there held that

"the essential elements of the crime are: (1) a false making of some instrument in writing; (2) a fraudu-

lent intent; (3) an instrument apparently capable of effecting a fraud.''

Assuming that Caroline C. S. Ford was appellant's wife May 12, 1914, when the deed was executed, the deed contained a false recital in that it described Elizabeth G. Ford as the wife of H. N. Ford. The deed did not purport to be the deed of Caroline C. S. Ford, or of anyone else than H. N. Ford and Elizabeth G. Ford, who signed it.

In his scholarly opinion in *State* v. *Wheeler,* 20 Or. 192 (25 Pac. 394, 23 Am. St. Rep. 119, 10 L. R. A. 779), Mr. Justice BEAN says:

"The term 'falsely', as applied to making a promissory note in order to constitute forgery has reference not to the contract or tenor of the instrument, or the fact stated in the writing, because a note or writing containing a true statement may be forged or counterfeited as well as any other; but it implies that the writing is false, not genuine, fictitious, not a true writing, without regard to the truth or falsehood of the statement it contains. The note must in itself be false, not genuine, a counterfeit, and not the true instrument which it purports to be.''

We think that there can be no doubt of the correctness of the principles so announced. The genuineness of an instrument is not dependent on the truthfulness of its recitals. A deed may falsely recite the area of the land conveyed, but if it is executed by the true parties it is still a genuine as distinguished from a false, forged or counterfeited instrument.

A deed containing such false recital may form the basis for some other criminal charge, but if it is executed by the parties purporting to convey or encumber it is not a forgery.

It is said by the Iowa court in *Loser* v. *Plainfield Savings Bank,* 149 Iowa, 672 (128 N. W. 1101, 31 L. R. A. (N. S.) 1112, 1114, 1115):

"There is no such thing as a 'legal name' of an individual in the sense that he may not lawfully adopt or acquire another, and lawfully do business under the substituted appellation. In the absence of any restrictive statute, it is the common-law right of a person to change his name, or he may by general usage or habit acquire a name notwithstanding it differs from the one given him in infancy. A man's name for all practical and legal purposes is the name by which he is known and called in the community where he lives and is best known."

This principle is also taught by *Smith* v. *United States Casualty Co.,* 197 N. Y. 420 (90 N. E. 947, 18 Ann. Cas. 701, 26 L. R. A. (N. S.) 1167); *Laflin & Rand Co.* v. *Steytler,* 146 Pa. St. 434 (23 Atl. 215, 14 L. R. A. 690, 695); *Roberts* v. *Mosier,* 35 Okl. 691 (132 Pac. 678, Ann. Cas. 1914D, 423); 19 R. C. L. 1332, 1333.

2, 3. It is not believed that Section 7093, L. O. L., abrogates the common-law principle announced by the foregoing authorities. This section of the Code empowers the County Court to hear and determine applications for the change of names. In 1852 Pennsylvania enacted a similar statute, found in the Session Laws for that year at page 301. It was held by the Supreme Court of Pennsylvania that the act "was in affirmance and aid of the common law, to make a definite point of time at which a change shall take effect," and that notwithstanding the statute a party can acquire by custom the right to use a certain name: *Laflin & Rand Co.* v. *Steytler,* 146 Pa. St. 434 (23 Atl. 215, 14 L. R. A. 690, 695). In any event we must assume in the absence of evidence on the subject that the common-law rule obtains in Illinois and the other states in which

appellant and Elizabeth G. Frary had resided from 1908 to 1914. During all of that time the latter had been known as Elizabeth G. Ford. The deed in question therefore was executed by her under the name by which she was known. In *State* v. *Wheeler,* 20 Or. 192 (25 Pac. 394, 23 Am. St. Rep. 119, 10 L. R. A. 779), Mr. Justice BEAN says:

"When a party signs a name not his own, but one which he has adopted, using it without the intent to deceive as to the identity of the person signing it, it is not a forgery."

The state cites *Commonwealth* v. *Foster,* 114 Mass. 311, 320 (19 Am. Rep. 353), *State* v. *Farrell,* 82 Iowa, 553, 558 (48 N. W. 940), and *Barfield* v. *State,* 29 Ga. 127, 131 (74 Am. Dec. 49). In all these cases the parties signing the instruments used their true names, but the instruments were signed with intent to be used as the contracts of other parties whose names were identical. In each of these cases there was a false making. The instrument was signed by one party with intent that it be uttered as that of another. We find no evidence of such intent in the instant case. At the date of the deed appellant was insisting that Elizabeth G. Ford or Elizabeth G. Frary was his wife and that he had never married Caroline C. S. Ford. There is no evidence of intention to utter the instrument as the deed of Caroline C. S. Ford. The deed purported to be what it was in fact, the deed of H. N. Ford and Elizabeth G. Ford.

The case of *State* v. *Wheeler,* 20 Or. 192 (25 Pac. 394, 23 Am. St. Rep. 119, 10 L. R. A. 779), does not stand alone in holding that a false recital of fact does not constitute forgery. The false recital that Elizabeth G. Ford was the wife of H. N. Ford did not under the authorities constitute a false making of the instru-

ment. In *United States* v. *Wentworth,* 11 Fed. 52, 55, it is said:

"To falsely make an affidavit is one thing; to make a false affidavit is another. A person may falsely make an affidavit, every sentence of which may be true in fact. Or he may actually make an affidavit, every sentence of which shall be false. It is the 'false making' which the statute makes an offense, and this is forgery as described in all the elementary books."

In State v. Young, 46 N. H. 266 (88 Am. Dec. 212, 216), the court says:

"A man may make a statement in writing of a certain transaction, and may represent and assert ever so strongly that his statement is true, but if it should prove that by mistake he is in error, and that his statement is entirely wrong, that could not be forgery; and suppose we go further, and admit that the statement was designedly false when made, and so made for the purpose of defrauding someone, it does not alter the case: it is not forgery. The paper is just what it purports to be, it is the statement of the man that made it; it is a true writing or paper, though the statement it contains may be false."

To the same effect are *United States* v. *Moore,* 60 Fed. 738, 739; *United States* v. *Glasener,* 81 Fed. 566–568; *United States* v. *Cameron,* 3 Dak. 132 (13 N. W. 561); *Territory* v. *Gutierrez,* 13 N. M. 312 (84 Pac. 525, 5 L. R. A. (N. S.) 375); 12 R. C. L. 144.

"Where one executes and issues an instrument purporting on its face to be executed by him as the agent of a principal therein named, he is not guilty of forgery, even though he has in fact no authority from such principal to execute the same": *Mann* v. *People,* 15 Hun (N. Y.), 155, 169; *People* v. *Bendit,* 111 Cal. 274 (43 Pac. 901, 52 Am. St. Rep. 186, 31 L. R. A. 831); *State* v. *Taylor,* 46 La. Ann. 1332 (16 South. 190, 49

Am. St. Rep. 351, 25 L. R. A. 591); *State v. Willson,*
28 Minn. 52 (9 N. W. 28); *In re Tully,* 20 Fed. 812.

We can make no distinction between a false recital
of agency and a false recital of the marriage relation.

The prosecution failed to prove a false making and
the Circuit Court erred in denying appellant's motion
for a directed verdict. The judgment is therefore
reversed.                                      REVERSED.

McBRIDE, C. J., and MOORE and BEAN, JJ., concur.